IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth James Kanger,<br><br>　　　　Petitioner,<br><br>vs.<br><br>Dora B. Schriro, et al.,<br><br>　　　　Respondents. | No. CV 07-8094-PCT-PGR (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

On September 7, 2007, Petitioner Kenneth James Kanger, who is confined in the Arizona State Prison, filed a *pro se* Petition for Writ of Habeas Corpus (Doc. #1). Respondents filed an Answer to Petition For Writ of Habeas Corpus Limited to Affirmative Defenses on April 30, 2008 (Doc. #60), and on May 28, 2008, Petitioner filed a Reply (Doc. #61-63).

**BACKGROUND**

On January 24, 2002, Petitioner was indicted in the Coconino County Superior Court, State of Arizona, on charges of first-degree murder, armed robbery, burglary in the first degree, theft of means of transportation, theft of a credit card, and theft. (Doc. #60, Exh. A at 9.[1]) Thereafter, the State filed allegations that the offenses charged were dangerous, and

---

[1] The pages of Respondent's Exhibit A at not stamped sequentially, but placed in the order of how the various documents constituting the exhibit were previously numbered, presumably as exhibits in another pleading.

that Petitioner had 14 prior felony convictions. (Doc. #60, Exh. A at 39, 37.) The charges arose out of the bludgeoning and stabbing murder of Edward Russell Calandrin on January 4, 2001 in Flagstaff, Arizona. The facts presented at trial are summarized in the decision of the Court of Appeals on direct review:

> Responding to a missing persons report, a police officer discovered the dead body of Edward C. ("victim") in his Flagstaff apartment. The victim had been killed by multiple stab wounds and blunt force trauma.
> Four days later, a police officer made a traffic stop in Maricopa County. Appellant was the sole passenger in the car, which was being driven by an acquaintance. The driver was unable to produce a driver's license. Appellant stated he had no identification and gave a false name. After he was arrested, appellant gave his true name.
> The officer searched the car and found appellant's wallet and a loaded handgun under the front passenger seat where appellant had been seated. He also found the victim's driver's license, credit card, and debit card in the rear hatch area of the car. In a search incident to appellant's arrest, the officer found a key for an Infiniti automobile that was later determined to belong to the victim.
> Nearly two months later, a Phoenix police officer found the Infiniti. It had been reported stolen from Flagstaff and was wanted as part of a homicide investigation there. The officer impounded the Infiniti. Flagstaff officers came to Phoenix and searched the vehicle the next day. Evidence found in the car and its trunk belonged to appellant.
> About a month after the Infiniti search, officers arrested appellant at a Phoenix motel.

(Doc. #60, Exh. . ¶¶ 2-6.)

A jury trial on the charges took place, and on November 7, 2002, the jury found Petitioner guilty as charged. (Doc. #60, Exh. A at 252-58.) The trial court then considered the evidence of historical prior convictions, and found that 6 historical prior felony convictions had been proven. (Doc. #60, Exh. A at 269.) The sentencing took place on December 12, 2002, at which time the trial court designated Counts 1, 2, and 3 as dangerous offenses, but nonrepetitive. (Doc. #60, Exh. A at 277.) The trial court found Counts 4, 5, 6, and 7 to be nondangerous, but repetitive offenses, and Count 7 was designated a felony. (Id.) The trial court imposed the following sentence: Count 1 » natural life; Count 2 » 21 years; Count 3 » 21 years; Counts 2 and 3 to run concurrent with Count 1; Count 4 » 20 years; Count 5 » 6 years; and Count 7 » 4½ years. Counts 4, 5, 6, and 7 were ordered to be served concurrently, but consecutively to the sentences imposed on Counts 1, 2, and 3. (Id.)

In his timely appeal, Petitioner raised the following issues:

1. Did the trial court err in instructing the jury that actual reflection was not required for a finding of premeditation?

2. Must [Petitioner's] convictions for Armed Robbery and Armed Burglary be vacated for a violation of the Double Jeopardy provision of the State and Federal Constitutions?

3. Did the trial court err in precluding evidence of the victim's lifestyle?

4. Must [Petitioner] be resentenced because the trial court sentenced [Petitioner] pursuant to the wrong statute?

(Doc. #60, Exh. B.)

The Arizona Court of Appeals affirmed his convictions on March 16, 2004, but vacated his sentence for first-degree murder (Count 1) and remanded for resentencing, for the reason that the trial court had considered the wrong sentencing statute in finding aggravating circumstances. (Doc. #60, Exh. C.) Petitioner then filed a *pro se* petition for review. (Doc. 60, Exh. D.) The Arizona Supreme Court denied the petition and issued its mandate on July 29, 2004. (Doc. #60, Exh. F.) Just prior to resentencing, Petitioner moved for a jury determination of aggravating factors pursuant to Blakely v. Washington.[2] (Doc. #60, Exh. A at 251.) The trial court denied the request for a jury trial on the aggravating circumstances, and then resentenced Petitioner to the same sentence previously imposed. (Doc. #60, Exh. A at 280, 281.)

Post-Conviction Relief Proceedings:

On April 12, 2004, while his direct appeal was still pending, Petitioner filed a notice of post-conviction relief. (Doc. #60, Exh. A at 212.) The trial court took no action on the notice, ruling that it lacked jurisdiction over the case while the appeal was pending. (Doc. #60, Exh. A at 227.) On July 6, 2004, Petitioner filed his petition for post-conviction relief (hereinafter "PCR"). (Doc. #60, Exh. A at 237.) The trial court did not address the PCR until after the Court of Appeal's remand and after Petitioner's resentencing: thereafter, at Petitioner's request the trial court appointed advisory counsel to represent Petitioner in post-conviction proceedings. (Doc. #60, Exh. A at 280 p. 4.)   On December 1, 2004, Petitioner

---

[2]Blakely v. Washington, 542 U.S. 296 (2004).

- 3 -

1  withdrew his waiver of counsel, and the trial court appointed attorney David Goldberg to

2  represent him. (Doc. #60, Exh. A at 282.)

3  Attorney Goldberg then filed a PCR on Petitioner's behalf on April 28, 2005, raising two

4  claims: his first claim, ineffective assistance of counsel in violation of the Sixth and

5  Fourteenth Amendments, specifically alleged the following deficiencies in performance:

6     A.        Failure of trial counsel to interview and call six witnesses whose testimony would
7               have corroborated Petitioner's defense or significantly impeached and undermined the State's case.

8     B.        Trial counsel's failure to offer and argue exculpatory nature of evidence,
9               including glass found at the murder scene, DNA samples, and blood stain found at the murder scene.

10    C.        Trial counsel's failure to present the testimony of the original medical examiner.

11    D.        Trial counsel's failure to object to the admission into evidence of 3 knives seized
12              from Petitioner upon his arrest.

   E.        Trial counsel's failure to object to improper closing arguments made by the
13              prosecutor.

14    F.        Trial counsel's failure to object to accomplice liability instruction.

15    G.        Appellate counsel was ineffective for failing to raise the jury instruction issue,
16              and failing to "federalize" claim.

   H.        The cumulative effect of these errors deprived Petitioner of a fair trial.
17 (Doc. #60, Exh. A at 297.)

18 The second claim presented by Petitioner in his PCR was that the trial court improperly

19 instructed the jury on an offense not charged in the indictment, in violation of his rights under

20 the Fifth, Sixth and Fourteenth Amendments. (Id.)

21 Subsequent to the filing of this PCR, Petitioner's counsel requested that Petitioner be

22 allowed to submit a *pro se* supplemental petition, raising claims that Petitioner's counsel did

23 not believe he could raise in good faith. The trial court denied this request. (Doc. #60, Exh.

24 A at 304.) Petitioner nonetheless filed a *pro se* successive notice of post-conviction relief

25 and petition. (Doc. #60, Exh. A at 327, 328.) He later filed another "supplemental" *pro se*

26 successive petition for post-conviction relief. (Doc. #60, Exh.A at 329.) On April 21, 2006,

27 the trial court ruled that the *pro se* petitions filed by petitioner failed to comply with the page

28 limit rule, in that his memorandum was 45 pages longer that the 25 permitted by the rule, and

1  returned the pleadings to Petitioner with leave to file compliant pleadings. (Doc. #60, Exh.
2  A at 338.) In so ruling, the trial court made note of the following:

> Defendant Kanger filed a second Notice of Post-Conviction Relief accompanied by a petition (approximately 283 pages in length with exhibits) on January 17, 2006, and supplemented it on February 15th with a memorandum and exhibits (95 pages). The State did not respond to either in reasonable reliance upon <u>the Court's minute entry orders of May 11, 2005 and June 6, 2005 denying Defendant's requests to file a supplemental petition</u>. The successive petition and supplement present matters raised in the initial petition and new issues, including the claim that the attorney (Goldberg) who filed the initial petition which is yet unresolved was ineffective. . . .
>
> The trial court is of the opinion, based upon the record, that it would be futile to appoint Defendant yet another counsel. Defendant has now had five different appointed counsel. He has asserted ineffective counsel claims against four of them and as to his fifth attorney, he has warned that he may be forced to make an ineffective counsel claim against him while at the same time requesting that said counsel represent him on his successive petition. Despite the Court's ruling denying hybrid representation, the Defendant has continued to file matters and it is reasonable to infer that he will continue to do so. Defendant's de facto self-representation has complicated, confused and delayed the procedural progress of this case. . . .

12 (Doc. #60, Exh. A at 338) (emphasis added).
13 The trial court returned Petitioner's *pro se* petitions to Petitioner, granting him leave to file
14 a page-compliant petition within 30 days. (<u>Id.</u>) Petitioner did not refile his petitions. (Doc.
15 #60, Exh. A at 356.) On May 1, 2006 the trial court addressed the merits of the claims raised
16 in the initial PCR and found that trial counsel was not ineffective, and that the trial court
17 properly instructed the jury on the law. (Doc. #60, Exh. A at 339.)
18  Petitioner filed a Petition for Review in the Arizona Court of Appeals, which was rejected
19 and returned to Petitioner on August 4, 2006 because it exceeded the page limit requirements
20 of Rule 32.9, Ariz. R. Crim. P. (Doc. #60, Exh.G.) Petitioner then filed a Petition for
21 Review in the Arizona Supreme Court, which was denied summarily on January 17, 2007.
22 (Doc. #60, Exh. J.) After giving Petitioner another opportunity to file a file a compliant
23 petition, the Arizona Court of Appeals dismissed the matter on March 16, 2007, noting that
24 Petitioner had indicated a refusal to file a compliant petition. (Doc. #60, Exh. N.) Petitioner
25 then filed a Motion for Reconsideration, which was denied by the appellate court on April
26 20, 2007. (Doc. #60, Exh. P.) The Arizona Supreme Court summarily denied review on
27 August 17, 2007. (Doc. #60, Exh. R.)

Petitioner filed the present federal Habeas Petition on September 7, 2007. (Doc. #1.) In it, he raises 21 claims:

1. The trial court abused its discretion by failing to disqualify the Coconino County Public Defender's Office.
2. Trial counsel failed to interview and call two alibi witnesses (Poling and Lizaraga).
3. Trial counsel failed to interview and call a corroborating alibi witness (Davis).
4. Trial counsel failed to interview and call two witnesses (Moore and Rees-Lund).
5. Trial counsel filed to interview and call the original medical examiner (Rollins).
6. Trial counsel failed to call collateral witness Sommer.
7. Trial counsel failed to request exclusion of evidence (small notebook found in Petitioner's bag).
8. Trial counsel bolstered a prosecution witness during cross-examination.
9. Trial counsel failed to take advantage of exculpatory scientific evidence (glass shard).
10. Trial counsel failed to object to the admission of irrelevant and prejudicial evidence (knives recovered from Petitioner).
11. Trial counsel failed to object to improper closing argument.
12. Trial counsel failed to object to issuance of a supplemental jury instruction.
13. Appellate counsel failed to argue on appeal that the supplemental jury instruction was a violation of the right to counsel, the right to due process, and the right to a fair trial. Appellate counsel thereby failed to preserve the federal nature of Petitioner's claims.
14. Petitioner's convictions are in violation of Petitioner's rights due to trial counsel's ineffective assistance in relation to the supplemental jury instruction.
15. Post-conviction relief counsel failed to raise issues in PCR petition.
16. Prosecutorial misconduct occurred in admission of knives into evidence.
17. Insufficient evidence existed to convict on the charges.
18. Trial counsel failed to properly prepare and argue the motion for directed verdict.
19. Post-conviction relief counsel failed to raise issue of prosecutorial misconduct in admission of knives seized from Petitioner's person at time of arrest.
20. Prosecutorial misconduct occurred in post-conviction relief proceedings based on coercion of corroborating witness, Davis.

- 6 -

21.   Ineffective assistance of counsel resulted in cumulative prejudicial effect. (Id. at 6-26.)

Petitioner raises none of the issues here that he raised in his direct appeal to the Arizona appellate courts. (Compare, Doc. #60, Exh. A at 297, to Doc. #1.) Petitioner concedes this fact in his Habeas Petition. (Doc. #1, at 2(8)(e), 3(9)(e).)

## DISCUSSION

**A.     Exhaustion and Procedural Default**

A writ of habeas corpus may *not* be granted unless it appears that a petitioner has properly exhausted all *available* state court remedies. 28 U.S.C. § 2254(b)(1); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982). As the Ninth Circuit has explained:

> The Supreme Court has held that if a "petitioner [has] failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," his claims are procedurally defaulted for purposes of federal habeas review.

Smith v. Baldwin, 466 F.3d 805, 811-12 (9th Cir. 2006) (citing, Coleman, 501 U.S. at 735 n. 1).

To properly exhaust state remedies, a petitioner must "fairly present" his claims to the highest state court, as mandated under state law, in a procedurally appropriate manner. O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). An Arizona petitioner sentenced *to less than the death penalty* may exhaust his federal claims by presenting them in a procedurally proper way to the Arizona Court of Appeals, either on direct appeal or in post-conviction proceedings, but he need not seek discretionary review in the Arizona Supreme Court. Crowell v. Knowles, 483 F.Supp.2d 925, 928-30, 933 (D. Ariz. 2007) (following 1989 statutory amendment, Arizona Court of Appeals has jurisdiction over criminal convictions involving less than a death sentence); cf. Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999) (citing pre-1989 statutory amendment); Castillo v. McFadden, 399 F.3d 993, 998 n.3 (9th Cir.), cert. denied 546 U.S. 818 (2005) (same). If a petitioner chooses to seek discretionary review in the Arizona Supreme Court, however, he must await the conclusion of that review before he may seek federal habeas relief. See Swoopes, 196 F.3d at 1010;

- 7 -

1   Sherwood v. Tompkins, 716 F.2d 632, 634 (9th Cir. 1983) (habeas petition prematurely filed
2   where proceedings concerning same claims pending in state court); Fordjour v. Stewart, 44
3   Fed. Appx. 789, 789-90 (9th Cir. 2002) (habeas action may be dismissed as unexhausted and
4   premature when discretionary petition is pending before the Arizona Supreme Court because
5   relief could be granted that would moot federal claims).

6         To properly exhaust claims raised in his state PCR, including any claim of actual
7   innocence, Petitioner must file a timely petition for review in the Arizona Court of Appeals.
8   State law provides in relevant part that "[w]ithin thirty days after the final decision of the trial
9   court on the petition for post-conviction relief . . . any party aggrieved may petition the
10  appropriate appellate court for review of the actions of the trial court."  Ariz. R. Crim.P.
11  32.9(c).  A claim has been fairly presented if the petitioner has described both the operative
12  facts and the federal legal theory on which the claim is based.  See Tamalini v. Stewart, 249
13  F.3d 895, 898-99 (9th Cir. 2001); Bland v. Cal. Dep't of Corrections, 20 F.3d 1469, 1472-73
14  (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir.
15  2000) (en banc).  The exhaustion requirement will not be met where the petitioner fails to
16  fairly present his claims.  See Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

17        The federal court will not consider claims not fairly presented unless the petitioner can
18  demonstrate that a miscarriage of justice would result, or establish cause for his
19  noncompliance and actual prejudice.  See Schlup v. Delo, 513 U.S. 298, 321 (1995);
20  Coleman, 501 U.S. at 750-51; Murray v. Carrier, 477 U.S. 478, 495-96 (1986).  To establish
21  cause, a petitioner must establish that some objective factor external to the defense impeded
22  her efforts to comply with the state's procedural rules.  Id.  The following objective factors
23  may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal
24  basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance
25  of counsel.  Id.   To establish prejudice, a prisoner must demonstrate that the alleged
26  constitutional violation "worked to his actual and substantial disadvantage, infecting his
27  entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170
28  (1982).  Where petitioner fails to establish cause, the court need not reach the prejudice

prong. Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96. To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. Schlup, 513 U.S. at 327; 28 U.S.C. § 2254(e)(2)(B).

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. See Harris v. Reed, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring); Rose, 455 U.S. at 519-20. Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); State v. Mata, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.2(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time barred. Beaty, 303 F.3d at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

If remedies are still available in state court, the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. See Rose, 455 U.S. at 519-20. However, if the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. See Teague v. Lane, 489 U.S. 288, 298-99 (1989); White v. Lewis, 874 F.2d 599, 602-05 (9th Cir. 1989) (state court twice ruled Petitioner had waived claims under Rule 32.2 by not raising on appeal).

I.      Exhaustion of State Remedies:

Petitioner did not present any of the 21 claims in his Habeas Petition to the Arizona Court of Appeals on direct review, as previously noted. The only claims raised in his PCR that appear in his habeas petition, are claims 2-6, 9-11, and 21, which each detail alleged failures of Petitioner's trial counsel amounting to individually, or cumulatively, ineffective assistance of counsel. Thus, the remaining claims: 1, 7-8, 12-20 were never presented to the state court, and thus are procedurally defaulted.

The claims presented common to both the PCR and the Habeas Petition were never presented at every level of state court in a procedurally correct manner. Although Petitioner submitted a petition for review of the trial court's denial of his PCR, it was rejected because Petitioner failed to file a page-compliant petition. The Arizona Court of Appeals instructed Petitioner to file a complaint brief but Petitioner refused to do so, even after the Arizona Supreme Court denied review of the Court of Appeals's decision to refuse the filing. As stated previously, in order to satisfy the exhaustion requirement, each claim must be presented to every level of state court in a procedurally correct manner. 28 U.S.C. 2254(b)(1)(A); Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Castillo, 399 F.3d. at 998. By refusing to comply with the page limit rule, Petitioner failed to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. He has therefore failed to exhaust his state remedies.

Petitioner's claims are procedurally barred because at this late date he cannot return to the state courts to present his claims. See Ariz. R. Crim. P. 32.1, 32.2(a) & (b); see generally Stewart v. Smith, 536 U.S. 856, 860-61 (2002)(holding that Rule 32.2(a) is an adequate and independent procedural bar). He would also be time-barred from seeking appellate review of the trial court's denial of his PCR. See Ariz. R. Crim. P. 32.9(c) (requiring a petition for review to be filed within 30 days from the final decision of the trial court on PCR). Petitioner's claims are therefore procedurally defaulted.

II.     <u>Miscarriage of Justice: Cause and Prejudice</u>:

In his Reply brief, Petitioner claims that his "actual innocense" constitutes a miscarriage of justice and amounts to cause and prejudice to excuse his procedural default. (Doc. #61.) Petitioner asserts the following with respect to his actual innocence:

> It is "proven by Petitioner as written in the PETITION (and w/Exhibits to it) **exceeds** the required showing by clear and convincing evidence it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt, and Petitioner mets an even higher threshold described as a hypothetical standard being "freestanding innocence" being "extraordinarily high" when the facts of claims (proven by Petitioner) in several GROUNDS in the PETITION (and w/Exhibits to it) are marsheled together which excuses any and all procedural bar/default defenses asserted by Respondent deriving from Respondent's accusation Petitioner failed to exhaust requiring an evidentiary hearing concerning **ACTUAL INNOCENCE** . . ."

(Id. at 2-3.)

In his Memorandum he filed in support of his Habeas Petition, he sets forth the facts in support of his actual innocence claim. (Doc. #6 at 87-99.) All of the facts are presented separately in support of his habeas claims regarding ineffective assistance of counsel, prosecutorial misconduct and insufficient evidence to convict. (Id.)

First, there are no "freestanding" claims of actual innocence in federal habeas. Herrera v. Collins, 506 U.S. 390, 400 (1993)(claims of actual innocence made as a substantive ground for relief is not a basis for federal habeas relief absent an independent constitutional violation). Neither may Petitioner utilize the actual innocence exception to procedural bar as a gateway to consideration of the merits of his claims. Schlup, 513 U.S. at 315-16. (Pertaining to the standard of proof for claims of actual innocence made for procedural purposes); Murray, 477 U.S. at 496 (requiring petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent").

Although Petitioner can not claim his actual innocence as an excuse for his procedural default, he has, in any event, not presented any new evidence, other than his own assertions, to buttress his claim of actual innocence. In ruling on Petitioner's PCR, the trial court addressed the various claims, most of which are raised here, such as: his counsel's failure to call the original medical examiner as a witness, the admission into evidence of three knives taken from Petitioner, trial counsel's failure to object, exculpatory evidence in the form of a

1  glass fragment found in Petitioner's shoe, the failure of trial counsel to interview witnesses,

2  and the ineffective assistance of appellate counsel, and found as follows (in pertinent part):

> Defendant makes two conclusory factual assertions that are not supported in the evidentiary record: (1) the knives do not match the knife print on the sheet and (2) the knives do not match the medical examiner's testimony regarding the length of the murder weapon.
> The medical examiner testified to the depth of the lethal wounds. He did not testify to the length of the instrument causing the wounds. There was no testimony that the knives did or did not match the purported bloody knife print (T.Ex. 144) on the sheet next to the victim's body. The knives (T.Ex. 197, 198, 199) were admitted. Those exhibits undermine Defendant's conclusory factual assertions.

(Doc. #60, Exh. A at 339, p. 2.)

> On the other hand, the Defendant presented an alibi defense and what amounted to a third party defense. For example, in closing defense counsel argued to the jury that Kim Vaughn, the last person to see the victim alive, saw the victim in the company of a man who did not fit the Defendant's description several days before the murder. She asked, "Is that who had the car? Is that whose DNA [unidentified minor DNA contributor] was on the bottle?" (R.T. 1241) Cross examination of the State's witnesses consistently sought to establish a third unidentified party committed the offense at a time when the Defendant was in Phoenix. "Only the slightest evidence suggested another person may have killed the victim." (State v. Kanger 1 CA-CR 03-0002, filed March 16, 2004, Slip Op. At 11). . . .Essentially the Defendant is saying "I wasn't in the apartment, I was in Phoenix. Somebody else was there." Of course, the fact finder did not have to decide on either/or - they could find both there and conclude that the Defendant personally stabbed and bludgeoned the victim.
> . . .There was overwhelming evidence proving that the Defendant committed the offenses, not as an accomplice, but as the sole perpetrator.

(Id., at 3-4.)

> Defendant has failed to prove that defense counsel's failure to interview or failure to subpoena to trial the enumerated witnesses was deficient representation or that calling them to testify would have created reasonable doubt as to his guilt.
> These claims were examined in the context of the overwhelming evidence of the Defendant's guilt as to each count.

(Id., at 5.)

Petitioner's continued claim - without accompanying new evidence fails to bring him within the "narrow class of cases . . .implicating a fundamental miscarriage of justice." Schlup, 513 U.S. at 315. Petitioner has not demonstrated a fundamental miscarriage of justice excusing his procedural default, nor has he demonstrated actual innocence. Likewise, he has not shown cause and prejudice. The Arizona Court of Appeals gave Petitioner two opportunities to remedy his non-compliant Petition for Review: first upon denying his motion

to permit the filing of a brief in excess of the page limitation, and once again after the Arizona Supreme Court denied review. He deliberately chose to ignore the court's instructions, and did so at his own peril. Accordingly, federal habeas review is precluded.

**IT IS THEREFORE RECOMMENDED:**

That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. **The objections shall not exceed 15 pages in length**. Thereafter, the parties have ten days within which to file a response to the objections. **The responses shall not exceed 10 pages in length**. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 21st day of July, 2008.

Michelle H. Burns
United States Magistrate Judge